OPINION OF THE COURT
ALITO, Circuit Judge.
Appellants Ronald and Evelyn Güila challenge the dismissal of their federal civil rights claims based on the Rooker-Feldman doctrine. Because we conclude that the Güi-las’ claims are not barred by that doctrine, we reverse.
I.
The Güilas own a home in North Strabane Township, Pennsylvania.[1] In April 1993, Lin-dencreek Associates (“Lindencreek”) applied to the Township for permission to subdivide and develop land adjacent to the Güilas’ property. The Township’s Board of Supervisors approved Lindencreek’s proposal on June 28,1994.
The Güilas were first informed of the Board’s approval in July 1994 when Linden-creek notified them that construction of the subdivision would interfere with their spring, which was located on land within the new subdivision, and the right-of-way that conveyed spring water to the Güilas’ home. Shortly after Lindencreek gave this notice, its contractors T.A. Ward Constructors (“Ward”) and Advanced Building Development (“ABD”), began excavating on the subdivision property. This excavation destroyed the Güilas’ spring and a water line in their right-of-way. The Güilas demanded that Lindencreek and its contractors restore the spring and water line, but Lindencreek did not make the requested repairs.
The Güilas appealed the Board of Supervisors’ approval of the subdivision to the Court of Common Pleas of Washington County. In that court, the Güilas alleged that the actions and policies of the Township “violatefd] due process and equal protection provisions of the state and United States Constitutions.” The Güilas further alleged that the Board’s decision to approve the Lindencreek subdivision was “invalid, arbitrary, capricious, an abuse of discretion and contrary to law.” The Court of Common Pleas affirmed the Board’s approval of the subdivision and dismissed the Güilas’ appeal. The court held that, under Pennsylvania law, the Güilas lacked standing to challenge the subdivision approval. Alternatively, the court concluded that the Township followed the applicable ordinances and statutes governing the subdivision process. The Güilas appealed this decision to the Commonwealth Court of Pennsylvania, which affirmed the lower court’s decision. The Güilas filed an allocatur petition with the Supreme Court of Pennsylvania, which granted review. That appeal is pending.
After the Commonwealth Court issued its opinion, the Güilas brought suit in federal district court. The Güilas -alleged that Lin-dencreek, its owner Alan Axelson, Ward, ABD, North Strabane Township, and Norma Wintermyer (a member of the Township *171 Board of Supervisors) violated their civil rights as guaranteed by the Due Process, Equal Protection, and Just Compensation Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. The Güilas also asserted pendent state-law causes of action against all of the defendants except the Township.
The defendants to the Güilas’ federal suit moved to dismiss. The district court granted this motion because it concluded that the Güilas’ federal claims were barred by the Rooker-Feldman doctrine. The district court declined to exercise jurisdiction over the Güilas’ remaining state-law claims and therefore dismissed those claims without prejudice. The Güilas appealed these dismissals to this court.
II.
Since the grant of a motion to dismiss for lack of subject matter jurisdiction is subject to plenary review, FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 839-40 (3d Cir.1996), we must independently decide whether the Rooker-Feldman doctrine bars the Güilas’ federal claims. In so doing, we are mindful of our obligation to preserve the avenues of direct review established by Congress. ASARCO Inc. v. Radish, 490 U.S. 605, 622-23, 109 S.Ct. 2037, 2048-49, 104 L.Ed.2d 696 (1989). Under 28 U.S.C. § 1257, state court litigants who have appealed an adverse judgment through the state system may seek review in the United States Supreme Court; the lower federal courts may not sit in direct review of the decisions of a state tribunal. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 103 S.Ct. 1303, 1314-15, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923); Guarino v. Larsen, 11 F.3d 1151, 1156-57 (3d Cir.1993); Port Auth. Police Benev. Ass’n v. Port Auth., 973 F.2d 169, 178 (3d Cir.1992).
While the rule barring our appellate review of state decisions is easily stated, the test for determining whether a particular litigant seeks such direct review is more complex. Under the Rooker-Feldman doctrine, lower federal courts cannot entertain constitutional claims that have been previously adjudicated in state court or that are inextricably intertwined with such a state adjudication. FOCUS, 75 F.3d at 840; Blake v. Papadakos, 953 F.2d 68, 71 (3d Cir.1992). A federal' claim is inextricably intertwined with a prior state adjudication if
the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. In other words, Rooker-Feldman precludes a federal action if the relief requested in the federal action would effectively reverse the state decision or void its ruling. Accordingly, to determine whether Rooker-Feldman bars [plaintiffs] federal suit requires determining exactly what the state court held.... If the relief requested in the federal action requires determining that the state court’s decision is wrong or would void the state court’s ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit.
FOCUS, 75 F.3d at 840 (omissions and alterations in original) (quoting Charchenko v. City of Stillwater, 47 F.3d 981, 983 n. 1 (8th Cir.1995)).
As this passage from FOCUS indicates, the first step in a Rooker-Feldman analysis is to determine “exactly What the state court held.” Id. Accordingly, we begin by examining the judgments of the Pennsylvania courts.
In their first court filing, the Güilas alleged that the Township’s actions in considering and approving the.Lindencreek subdivision “violatefd] the due process and equal protection provisions of the state and United States Constitutions” and that the Board of Supervisors’ decision was “invalid, arbitrary, capricious, an abuse - of discretion and contrary to law.” App. at 67a-71a. The Court of Common Pleas responded to these allegations by first addressing the issue of the Güilas’ standing. The court concluded that, under Pennsylvania law, adjacent landowners with a private interest in the property of a proposed subdivision do not have standing to challenge the approval of the subdivision. See Gulla v. North Strabane Township, Civ. *172 Div. No. 94-3933 at 2-4 (C.P. of Washington County Sep. 18, 1995). Since the Güilas alleged an injury to private rights that they received by deed, the court held that they could not challenge the subdivision proceedings. See id. Additionally, the court analyzed and rejected the Güilas’ claim that the Township and Lindencreek failed to comply with the ordinances governing the subdivision process. The court emphasized that, even if the Township’s ordinances had been violated, the Güilas lacked standing because “the Township is not permitted to consider the private rights of individuals before granting subdivision approval” and because the Township’s environmental regulations are “unaffected by the alleged private water rights of individuals.” Id. at 4-5. Despite this conclusion that the Güilas lacked standing, the court substantively analyzed whether the defendants complied with the Township’s ordinances. The court concluded that the Township followed the procedures for approving a subdivision and that Lindencreek’s final subdivision plan contained all of the information necessary to comply with the Township’s development and environmental ordinances.
If the Court of Common Pleas had closed its opinion with the analysis- just discussed, we would easily conclude that the opinion does not invoke the Rooker-Feldman doctrine to bar the Güilas’ federal claims. “Rooker-Feldman applies only when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual.” FOCUS, 75 F.3d at 840. The essence, of the Court of Common Pleas’ opinion is that, under Pennsylvania law, the Güilas lack standing to challenge the subdivision process. Since the Güi-las’ standing to bring their federal claims is solely a matter of federal law, the district court clearly could consider the Güilas’ due process, equal protection, and Fifth Amendment takings claims without disturbing the state court’s conclusion. However, at the end of its discussion about whether Linden-creek’s plan complied with the Township’s environmental ordinance, the state court added: “Because Lindencreek Associates complied with all federal, state, and local requirements, [the Güilas’] assertion of error, based solely on private rights is inappropriate in the instant action.” Gulla, Civ. Div. No. 94-3933 at 5.
The defendants collectively assert that this concluding statement summarily rejected the Güilas’ due process and equal protection claims on the merits. If this contention is true, then we must conclude that the state court’s opinion bars at least some of the Güilas’ federal claims. If a state court considers and rejects a constitutional claim on the merits, a paucity of explicit analysis in the court’s opinion will not strip the holding of its validity for purposes of Rooker-Feldman’ s jurisdictional bar. Indeed, in Feldman, the state court adjudicated the plaintiffs constitutional claims summarily and did not refer to each of the claims when it issued its per curiam order. Nevertheless, the state court decision was sufficient to invoke the jurisdictional bar because “Feldman had raised his legal claims in a petition to the court and the court had issued an overarching decision ... thus implicitly denying all of his legal claims.” Guarino, 11 F.3d at 1159-60.
However, upon careful scrutiny of the Court of Common Pleas’ opinion, we conclude that the court did not expressly or implicitly adjudicate the Güilas’ constitutional claims. The Güilas’ claims were proeedurally styled as an appeal of the Township’s approval of the Lindencreek subdivision, and the court’s ruling is clearly based on its conclusion that the Güilas lack standing to bring such a suit. Under Pennsylvania law, the court could not resolve the merits of the Gullas’ claims if they lack standing to bring their suit. See, e.g., Nye v. Erie Ins. Exch, 504 Pa. 3, 470 A.2d 98, 100 (1983); In re T.J., 699 A2d 1311, 1314 (Pa.Super.Ct.1997); Building Indus. Assoc. v. Manheim Township, 710 A.2d 141, 146-47 (1998) (“when [the Court of] Common Pleas determined that[the plaintiff] lacked standing ..., it no longer possessed jurisdiction over the case to address any of the merits.”); Commonwealth v. Desiderio, 698 A.2d 134, 140 (Pa.Commw.Ct.1997). In light of this well-established principle, we *173 believe that the court’s opinion cannot be cast as an adjudication of the Güilas’ constitutional claims. Moreover, to the extent that the state court commented upon the merits, it limited its discussion to the question of whether the Township failed to follow the express provisions of its subdivision and environmental ordinances. It is in the context of this discussion that the court stated that Lindenereek “complied with all federal, state, and local requirements.” Guild, Civ. Div. No. 94-3933 at 5. Read in context, we believe this statement refers to compliance with technical zoning and environmental regulations, and not to a conclusion that the Township’s actions satisfied the requirements of the federal Due Process and Equal Protection Clauses.[2]
Likewise, the decision of .the Commonwealth Court does not bar the Güilas’ federal claims under the Rooker-Feldman doctrine. The Commonwealth Court held that the Court of Common Pleas “correctly found that the Güilas did not have standing to appeal the subdivision approval process.” Gulla v. North Strabane Township, 676 A.2d 709 (Pa.Commw.Ct. 1996). The Commonwealth Court therefore affirmed the lower court’s dismissal of the Güilas’ claims. See id. Since the Commonwealth Court’s reasoning parallels that discussed above, we conclude that its decision is not inextricably intertwined with the Güilas’ federal claims.
As an alternative basis for affirmance, the defendants suggest that the decisions of the Court of Common Pleas and the Commonwealth Court preclude the Güilas’ federal action under traditional principles of claim and issue preclusion. In Feldman, the Supreme Court noted that a litigant who raises some but not all of its constitutional claims in state court may be precluded from raising those claims in any other forum. See Feldman, 460 U.S. at 482 n. 16, 108 S.Ct. at 1816 n. 16. Likewise, we have stated that “[wjhen a litigant expects that a court is willing to consider its legal claims, raises some of those claims, and has those claims adjudicated, it makes sense to apply normal principles of claim preclusion to hold that the litigant has waived any legal claims he or she fails to raise which have arisen from the same transaction.” Guarino, 11 F.3d at 1160.
In this case, we conclude that the Güilas are not precluded from bringing their federal claims because the state court could not and did not adjudicate the merits of their constitutional claims. Rather, the state court noted that the Güilas lacked standing to raise their constitutional claims in an appeal of the Board’s subdivision decision. Since the Gullas could not obtain an adjudication of their claims in state court, they are not precluded from raising their constitutional claims in the federal forum. See, e.g., Hawksbill Sea Turtle v. FEMA 126 F.3d 461, 475 (3d Cir.1997) (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4421, at 207-08 (“If a first decision is supported by findings that deny the power of the court to decide the case on the merits and by findings that reach the merits, preclusion is inappropriate as to the findings on the merits.”)); Guarino, 11 F.3d at 1161-62 & n. 8 (“A litigant suffers no real harm by attempting to raise his or her constitutional claim in state court: if the state court refuses to address the constitutional claim, the litigant can then raise the claim in federal court without any jurisdictional, abstention, or collateral estoppel problems.”); Valenti v. Mitchell, 962 F.2d 288, 296 (3d Cir.1992) (stating that the Rooker-Feldman doctrine and claim preclusion will only apply when litigants have had a “full and fair opportunity to litigate their ... claim in state court.”).
Since we conclude that the Güilas are not precluded from bringing their federal claims, *174 we need not address their assertion that the Rooker-Feldman doctrine does not bar their claim against Norma Wintermyer because she was not a party to the state suit in her individual capacity. Likewise, we do not consider the Güilas’ argument that their federal claims escape the Rooker-Feldman bar because they are allegedly based on newly discovered facts. We also decline to address the argument that the Güilas failed to state a claim against ABD and Ward. If the Güilas failed to state a claim against these defendants, the district court may have to consider whether it will allow them to amend their pleadings. Accordingly, we should allow the district court to address this, argument in the first instance. See, e.g., Hudson United Bank v. Litenda Mortgage Corp., 142 F.3d 151, 159-60 (3rd Cir.1998).
For the foregoing reasons, we vacate the order of the district court entered on April 24, 1997 and remand for further proceedings consistent with this opinion.

. Because the district court dismissed the Güilas’ claims for lack of subject matter jurisdiction, we draw these facts from the allegations in the Güi-las’ complaint. See Liberty Lincoln-Mercury v. Ford Motor Co., 134 F.3d 557, 571 n. 18 (3d Cir.1998); Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173, 175 (3d Cir.1997).

. We recognize that the inclusion of the word"federal” in this quote could imply that the court considered and rejected the Güilas’ federal constitutional claims. However, in the same sentence the court reaffirmed that the Güilas’ "assertion of error, based solely on private rights is inappropriate in the instant action.” Gutta, Civ. Div. No. 94-3933 at 5. In light of this conclusion that the Güilas lacked standing to bring their suit, we conclude that the court did not issue an overarching decision on the merits of the Güilas’ claims. Moreover, even if this statement could be cast as an adjudication of the Güilas’ federal claims, it could not invoke the Rooker-Feldman bar since the commentary on the merits followed a conclusion that the Güilas’ lacked standing. See Hawksbill Sea Turtle v. FEMA, 126 F.3d 461, 475 (3d Cir.1997).